BYRON M. HARMAN, PROSECUTOR, v. ERNEST A. REED, SUPERVISOR OF ESSEX COUNTY, RESPONDENT.

Argued October 3, 1929—Decided May 6, 1930.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the prosecutor, *Robert H. McCarter*.

For the respondent, *Arthur T. Vanderbilt*.

PER CURIAM.

This writ brings before us, for review, the order of judgment of Ernest A. Reed supervisor of Essex county, removing the prosecutor from his position as superintendent of the Essex County Sanatorium, which position he has occupied since 1923.

Extremely voluminous proofs are brought before us upon which the respondent based his findings. These we have not examined or considered because it has seemed to us that there was a basic question of jurisdiction involved. That question is, did the respondent, as supervisor of Essex county, have jurisdiction over the prosecutor and the subject-matter of the inquiry?

We think he did not.

It is true that the statute creating the office of supervisor (*Pamph. L.* 1900, *p.* 168; 1 *Comp. Stat.* 529, and *Pamph. L.* 1918, *ch.* 206, *p.* 751) provides: "1. There shall be a chief executive officer in counties of the first class in this state to be known as the county supervisor. 2. The county supervisor * * * shall be the chief executive officer of the county and may recommend to the board of chosen freeholders to pass such measures as he may deem necessary or expedient for the welfare of the county.

3. It shall be the duty of the county supervisor to exercise a constant supervision over the conduct of all subordinate officers and employes and to examine into all complaints made against any of them, for violation or neglect of duty and if it is found that any officer or employe is guilty of the charges brought against them the county supervisor may suspend or remove them."

Under *Pamph. L.* 1912, *ch.* 217, *p.* 340, authorizing hospitals for the treatment of tuberculosis in counties, such institutions are placed under the direct control and management of a board of managers, to be appointed by the board of freeholders.

Section 3 of such act authorized such board of managers to appoint a superintendent to hold office at the pleasure of such board of managers. His qualifications are defined to be: "Shall be a qualified practitioner of medicine or other person trained for work of said character."

Section 4 of this act provides: "The superintendent shall be the chief executive officer of the hospital and subject to the by-laws, rules and regulations thereof and to the powers of the board of managers."

By *Pamph. L.* 1922, *ch.* 278, *p.* 685, § 4, and other portions of the act of 1912, *supra,* were amended.

Section 4 was amended so as to read as follows: "4. The superintendent shall be the chief executive officer of the hospital, and subject to the by-laws, rules and regulations thereof, and to the powers of the board of managers, or of said board of freeholders, or of said committee, as the case may be * * *." The addition over the original text is "or of said board of freeholders or of said committee as the case may be."

A reading of the entire section will indicate a legislative intent to take away from the board of managers the exclusive control over the superintendent under the original act of 1912 and to distribute such powers amongst such board of managers, the board of freeholders and a committee of the latter board.

Two things are to be noted, however: 1. That the power of appointments remains in the board of managers. 2. That the superintendent remains "the chief executive officer of the hospital."

There is also to be taken into consideration the fact that with such power of appointment there remains the provision contained in the original act of 1912, *supra,* that such superintendent "shall hold office at the pleasure of such board" (board of managers).

It is further to be considered that the Supervisor act was originally adopted in 1900 and re-written into the revision of the County act in 1918. *Pamph. L.* 1918, *p.* 751.

The Tubercular Hospital act was originally adopted in 1912 and its amendment, before referred to, was adopted in 1922.

It seems to us that the obvious result and controlling conclusion to be arrived at from a construction and application of these legislative acts must be that the prosecutor is not such a subordinate officer as to come under the supervision and control of the respondent, the county supervisor.

It seems to us that if this authority and control extends to the prosecutor it can only be so because such supervisor is by the statute, creating such officer, designated as "the chief executive officer of the county." If his authority rests upon this, then it seems to us, that by the same token and the same process of reasoning, members of the board of chosen freeholders, as well as the present prosecutor, must be "subordinate officers," in comparison with the county supervisor. This, we think, would lead to an absurd conclusion. But there is another reason that seems to us to be controlling and conclusive and that is that the power to appoint the superintendent is and always has been in the board of managers and such power to appoint is complied with the following right in the appointee, "and shall hold office at the pleasure of such board" (board of managers).

We conclude, therefore, that the respondent, county supervisor, was without authority and jurisdiction to hear and pass upon the charges in question and therefore the judgment brought before us must be set aside.